IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

GUMERSINDO JIMENEZ-SILVA,            §
A Number: 206-256-050,               §
                                     §
        *Petitioner*,                §
                                     §
VS.                                  §        CIVIL CASE NO. SA-26-CV-2543-FB
                                     §
BOBBY THOMPSON, Warden, of South Texas §
Immigration Processing Center; MIGUEL §
VERGARA, Field Office Director of Enforcement §
and Removal Operations, San Antonio Field Office, §
Immigration and Customs Enforcement; §
MARKWAYNE MULLIN, Secretary, U.S. §
U.S. Department of Homeland Security; TODD §
BLANCHE, Acting U.S. Attorney General; §
EXECUTIVE OFFICE FOR IMMIGRATION §
REVIEW; and DEPARTMENT OF HOMELAND §
SECURITY,                            §
                                     §
        *Respondents*.               §

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Before the Court are Petitioner Gumersindo Jimenez-Silva's ("Petitioner") Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Petition") (ECF No. 1); Federal Respondents' ("Respondents") Response to the Petition for Writ of Habeas Corpus (ECF No. 4); and Petitioner's Reply to Response ("Petitioner's Answer") (ECF No. 5). The relevant facts are undisputed and the Court grants relief without a hearing. *See Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (citations omitted). After careful consideration, the Court is of the opinion that the Petition should be granted and Petitioner should be released from custody under reasonable and appropriate conditions of release.

## BACKGROUND

Petitioner is currently detained in the South Texas Detention Facility in Pearsall, Texas, located in the Western District of Texas. Petitioner argues that Petitioner's detention is unlawful and asks the Court to order Petitioner's immediate release on the same grounds as this Court's ruling in *Mendoza*

*v. Noem*, ___ F. Supp. 3d ___, Civil Case No. 5:26-CV-0728-JKP, 2026 WL 809441 (W.D. Tex. Feb. 26, 2026).

Petitioner entered the United States in 2004 and has remained continuously present in the country since that time. Petitioner was detained on February 28, 2026, during a traffic stop while on his way to work. He has no criminal record, was employed as a plumber, and was the primary financial provider for his household. Petitioner has consistently filed taxes with his wife using an Individual Taxpayer Identification Number (ITIN), which he asserts demonstrates his commitment to complying with U.S. laws and fulfilling his financial responsibilities. He and his wife rent a home in the United States which they share with their three U.S. citizen children, ages 9, 7, and 2.

## JURISDICTION

Jurisdiction is always an initial consideration because it concerns the Court's power over a case. *Louisiana v. U.S. Dep't of Energy*, 90 F.4th 461, 466 (5th Cir. 2024). "'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). They "must presume that a suit lies outside this limited jurisdiction, and the burden of establishing federal jurisdiction rests on the party seeking the federal forum." *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001).

Several sections of the Immigration and Nationality Act ("INA," codified at 8 U.S.C. ch. 12 § 1101 *et seq.*) curtail the jurisdiction of federal district courts in immigration cases. *See Jennings v. Rodriguez*, 583 U.S. 281, 292–96 (2018). However, courts in the Western District of Texas have rejected Respondents' jurisdictional arguments in similar cases. *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-0773-JKP, 2025 WL 2976923, at *2 (W.D. Tex. Oct. 21, 2025) (rejecting arguments under 8 U.S.C. § 1252(g), § 1252(a)(5), § 1252(b)(9), and § 1226(e)).

Federal courts possess jurisdiction under 28 U.S.C. § 2241 to order the release of any person held in custody of the United States in violation of federal law or the Constitution. 28 U.S.C. § 2241(c); *Vieira v. De Anda-Ybarra*, No. EP-25-CV-432-DB, 2025 WL 2937880, at \*4 (W.D. Tex. Oct. 16, 2025). As noted above, Respondents have argued that several provisions of the INA divest the Court of jurisdiction to consider habeas petitions challenging detention. *See Granados v. Noem*, No. SA-25-CA-1464-XR, 2025 WL 3296314, at \*1–4 (W.D. Tex. Nov. 26, 2025). However, each of the jurisdiction-stripping provisions cited by Respondents is inapposite. *Id.* For example, 8 U.S.C. §§ 1252(g) and (b)(9) deprive the Court of jurisdiction to consider challenges to removal proceedings, not challenges to detention. *See id*. at \*1–3. Similarly, 8 U.S.C. § 1225(b)(4), which addresses challenges by immigration officers to favorable admissions decisions, has nothing to do with detention. *See id*. at \*3. Finally, 8 U.S.C. § 1226(e) bars judicial review of discretionary detention decisions, not mandatory detention under Section 1225(b). *See id*. at \*3–4. Accordingly, the INA does not deprive the Court of jurisdiction over challenges to detention.

## ADMINISTRATIVE EXHAUSTION

Respondents have argued petitioners must exhaust administrative remedies before pursuing habeas relief. They explain that approximately 3.74 million cases are pending in immigration court and the federal courts are neither intended nor equipped to handle review of such magnitude. As Judge Jason K. Pulliam explained:

> The Court could not agree more that the federal courts lack staff, time, and resources to handle the flood of habeas cases resulting from the current emphasis on immigration detention and removal. But it just as strongly recognizes that its duties and obligations include addressing immigration habeas petitions that assert unlawful detention in violation of the United States Constitution and federal law.

*Mendoza v. Noem*, ___ F. Supp. 3d ___, Civil Case No. 5:26-CV-0728-JKP, 2026 WL 809441, \*3 (W.D. Tex. Feb. 26, 2026).

While persons seeking habeas relief typically must first exhaust available administrative remedies, *Hinojosa v. Horn*, 896 F.3d 305, 314 (5th Cir. 2018), the exhaustion requirement in the immigration detention context is likely prudential rather than jurisdictional, *Calderon Lopez v. Lyons*, No. 1:25-CV-226-H, 2026 WL 44683, at *1 (N.D. Tex. Jan. 7, 2026). Recent district court decisions have found that exhaustion would be "an exercise in futility" where the Board of Immigration Appeals ("BIA") has recently issued binding precedent adverse to the petitioner's statutory claim, such that there is little prospect the BIA would reconsider its position. *Id*. Additionally, multiple courts have held there is no further requirement to exhaust administrative remedies when challenging detention procedures on constitutional grounds. *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 681 (W.D. Tex. 2025); *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-773-JKP, 2025 WL 2976923, at *7 (W.D. Tex. Oct. 21, 2025). In *Hernandez-Fernandez*, a similar case, Judge Pulliam found that "*Hinojosa* is entirely inapt" and the petitioner's claim was "properly before the Court with no further requirement to exhaust administrative remedies for two reasons: (1) the Petition raised constitutional questions that were beyond the scope of administrative review and (2) the immigration appellate timeline exacerbates the Petitioner's alleged injury of prolonged detention without a bond hearing." *Id*. at 6–7.

Additionally, the Fifth Circuit has recognized that, while exhaustion is the general rule, "exceptions to this general rule" exist. *Garner v. U.S. Dep't of Lab.*, 221 F.3d 822, 825 (5th Cir. 2000). "A failure to exhaust administrative remedies may be excused when the claimant advances a constitutional challenge unsuitable for determination in an administrative proceeding, or when the unexhausted remedy is plainly inadequate." *Id*. Federal courts have "the discretion to excuse the exhaustion requirement." *Id*. Here, the "constitutional challenges are not the types of questions" requiring exhaustion, and requiring Petitioner "to exhaust administrative remedies relating to same

would be an exercise in futility." *Id*.  Further, by Respondents' own interpretation of 8 U.S.C. § 1225, detention is mandatory without a bond hearing. Thus, the instant petition "does not present an exhaustion problem." *Zuniga v. Lyons*, 814 F. Supp. 3d 685, 689 n.1  (N.D. Tex. 2025); *accord Shi v. Lyons*, 812 F. Supp. 3d 698, 703 n.6 (S.D. Tex. 2025).

## LEGAL STANDARD

The Supreme Court has referred to the "Great Writ" as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement" and "[r]eceived into our own law in the colonial period." *Fay v. Noia*, 372 U.S. 391, 400 (1963), *overruled in part on other grounds, Wainwright v. Sykes*, 433 U.S. 72 (1977), and *abrogated in part on other grounds by Coleman v. Thompson*, 501 U.S. 722 (1991). The Supreme Court pointed out the function of the writ:

> has been to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints. Its root principle is that in a civilized society, government must always be accountable to the judiciary for a man's imprisonment: if the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release. Thus there is nothing novel in the fact that today habeas corpus in the federal courts provides a mode for the redress of denials of due process of law. Vindication of due process is precisely its historic office.

*Id*. at 401–02.

"Only in the rarest of circumstances has Congress seen fit to suspend the writ." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).  Moreover, "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Id*. (citing U.S. Const., Art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it")).  Indeed, absent suspension, it is available to "challenge the legality of their detention" by "noncitizens detained by our Government in territory over which another country maintains *de jure* sovereignty," such as Guantanamo Bay. *Boumediene v. Bush*,

553 U.S. 723, 770 (2008). The Great Writ remains "a critical check on the Executive, ensuring that it does not detain individuals except in accordance with law." *Hamdi*, 542 U.S. at 525 (citing *Immigration & Naturalization Serv. v. St. Cyr*, 533 U.S. 289, 301 (2001), *superseded by statute on other grounds as stated in Nasrallah v. Barr*, 590 U.S. 573, 580 (2020)).

And, the fundamental protection of habeas corpus applies to immigration-related detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). The Supreme Court in *Zadvydas* stated:

> It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

*Id.* at 693 (citations omitted). This "distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Id.*

Habeas petitioners must show they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 696 (S.D. Tex. 2025) (quoting 28 U.S.C. § 2241(c)(3)); *accord Orellana v. Kyle*, 65 F.3d 29, 31 (5th Cir. 1995) (per curiam) (recognizing habeas relief cannot "be had absent [an] allegation" that petitioner "has been deprived of some right secured to him or her by the United States Constitution or the laws of the United States"). They "bear[] the burden of proving that [they are] being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy [this] burden of proof by a preponderance of the evidence." *Villanueva*, 801 F. Supp. 3d at 696 (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) and citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). Courts "considering a habeas petition must 'determine the facts and dispose of the matter as law and justice require.'" *Id*. at 697 (quoting 28 U.S.C. § 2243).

**STATUTORY FRAMEWORK FOR IMMIGRATION-RELATED DETENTION**

Relevant here, Judge Rodriguez set forth the statutory framework for immigration-related detention:

> [T]he INA prescribes two forms of detention for noncitizens in removal proceedings: mandatory detention under 8 U.S.C. § 1225(b) and discretionary detention under 8 U.S.C. § 1226(a). Noncitizens subject to discretionary detention under Section 1226(a) are entitled to a bond hearing at the outset of their detention. See 8 C.F.R. §§ 1003.19(a), 1236.1(d). Respondents contend that Petitioner is an alien who has not been admitted and so is an applicant for admission. 8 U.S.C. § 1225(a)(1). Accordingly, Petitioner is subject to mandatory detention under Section 1225(b)(2)(A). Noncitizens detained under this provision may be released only through the Department of Homeland Security's ("DHS") exercise of its parole authority under 8 U.S.C. § 1182(d)(5)(A).

*Perez v. Thompson*, No. SA-26-CA-02187-XR, 2026 WL 1078577, at *2 (W.D. Tex. Apr. 17, 2026). Release from initial detention, whether under Section 1226(a) or 1182(d)(5)(A), can be granted only based on individualized findings that the noncitizen represents neither a flight risk nor a danger to the community. *See* 8 C.F.R. § 241.4(e) (criteria for discretionary release under Section 1226(a) include a determination that the noncitizen "is not likely to pose a threat to the community following release" and "does not pose a significant risk of flight if released"); 8 C.F.R. § 212.5(b) (parole is "justified only on a case-by-case basis for 'urgent humanitarian reasons' or 'significant public benefit,' provided the aliens present neither a security risk nor a risk of absconding") (emphasis added).

"Thus, every noncitizen who has been paroled or released into the interior of the country has been found by a government official to pose neither a security risk nor a flight risk." *Perez*, 2026 WL 1078577, at *2. Moreover, the statutes and regulations governing immigration and removal proceedings afford important procedural safeguards to such noncitizens. *See United States v. Caceres*, 440 U.S. 741, 760 (1979); 8 C.F.R. § 241.4(l)(2) (procedures for revoking noncitizen's supervised release); 8 C.F.R. § 212.5(e)(2)(i) (procedures for terminating parole).

**RECENT INTERPRETATION OF 18 U.S.C. § 1225**

As the Supreme Court has explained, Section 1225 "applies primarily to aliens seeking entry into the United States." *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018). Section 1226, on the other hand, has historically been understood to "appl[y] to aliens already present in the United States." *Id.* at 303. "For nearly three decades, Respondents consistently considered noncitizens present in the United States without having been admitted or paroled as being detained under 8 U.S.C. § 1226(a) and thus entitled to bond hearings." *Perez*, 2026 WL 1078577, at *2 & n.2. (citing Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (stating that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination")).

In July 2025, Respondents adopted an interpretation that noncitizens who are present in the United States without admission or parole are ineligible for bond hearings. *Id.* at *3. Todd Lyons, Acting Director of ICE, issued an internal memorandum (the "Lyons Memo") explaining that the agency had "revisited its legal position" and "determined that [Section 1225] of the [INA], rather than [Section 1226], is the applicable immigration detention authority for all applicants for admission." *Martinez v. Hyde*, 792 F. Supp. 3d 211, 217–18 (D. Mass. 2025). The BIA adopted this position in *In re Yajure Hurtado*, 29 I. & N. Dec. 216, 220 (BIA 2025), holding that all noncitizens who entered the country without inspection are subject to mandatory detention without a bond hearing under 8 U.S.C. § 1225(b).

Then, in February 2026, the Fifth Circuit foreclosed statutory challenges to detention under Respondents' interpretation of Section 1225. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 504-08 (5th Cir. 2026). Respondents have invoked *Buenrostro-Mendez* in response as binding precedent that

requires denial of habeas petitions such as this. "That position, however, takes *Buenrostro-Mendez* too far." *Mendoza v. Noem*, ___ F. Supp. 3d ___, Civil Case No. 5:26-CV-0728-JKP, 2026 WL 809441, *4 (W.D. Tex. Feb. 26, 2026).

"Petitioner's claim is constitutional, not statutory in nature." *Perez v. Thompson*, No. SA-26-CA-02187-XR, 2026 WL 1078577, at *4 (W.D. Tex. Apr. 17, 2026). As Judge Rodriguez explained, "'[l]egislation cannot detract from the privilege afforded by the constitution.'" *Id.* (quoting *Counselman v. Hitchcock*, 142 U.S. 547, 565 (1892), *overruled on other grounds by Kastigar v. United States*, 406 U.S. 441 (1972)). Thus, "once it is determined that the due process clause applies, the question remains what process is due. The answer to that question is not to be found in the ... statute." *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532 (1985).

Respondents have cited *Jennings v. Rodriguez* for the proposition that detention is mandatory, so applicants for admission are not entitled to bond hearings. 583 U.S. at 297, 300. As a matter of statutory construction, *Jennings* held that the mandatory detention statutes, § 1225(b) and § 1226(a), did not impose a six-month detention limitation or require periodic bond hearings. *Id.* at 297-301, 312. "But the [*Jennings*] Court expressly left open the constitutional due process question and remanded the case with instructions that the lower courts consider the constitutional issue in the first instance." *Santiago v. Noem*, No. EP-25-CV-361-KC, 2025 WL 2792588, at *7 (W.D. Tex. Oct. 2, 2025) (citing *Jennings*, 583 U.S. at 312) ("Consistent with our role as a court of review, not of first view . . . we do not reach respondents' constitutional arguments on their merits.") (citations and quotations omitted)). Four years later, attorneys for Respondents conceded before the Supreme Court "that as-applied constitutional challenges remain available to address 'exceptional' cases" in the context of immigration detention. *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 583 (2022). And the Court again declined to

consider the constitutional questions, electing to "leave them for the lower courts to consider in the first instance." *Id*. (citing *Jennings*, 583 U.S. at 312).

## DISCUSSION

As alleged, Petitioner's case appears materially indistinguishable from several others in which courts in this District have found a procedural due process violation. *See e.g.*, *Perez v. Thompson*, No. SA-26-CA-02187-XR, 2026 WL 1078577, at *4 (W.D. Tex. Apr. 17, 2026); *Rodriguez Brizuela v. Noem*, No. 5:26-CV-0279-JKP, 2026 WL 752257, at *5 (W.D. Tex. Mar. 12, 2026); *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d  668, 685-87 (W.D. Tex. 2025).  In fact, Respondents agree that "there do not appear to be material factual differences between those cases and this case."[1]  Response, ECF No. 4 at page 2.  The Court considers these prior decisions to determine whether the facts of Petitioner's case warrant a different outcome.

A primary issue raised by Petitioner–namely, that detention pursuant to 8 U.S.C. § 1225 and the Board of Immigration Appeals ("BIA") decision in *In re Yajure Hurtado*,[2] 29 I&N Dec.216 (BIA 2025), is unlawful–was rejected by the Fifth Circuit in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026).  The *Buenrostro-Mendez* panel opinion held that the statute does not entitle people in Petitioner's position to a bond hearing or release when they are detained pending removal proceedings.

---

[1]  *Mendoza v. Noem*, ___ F. Supp. 3d ___, Civil Case No. 5:26-CV-0728-JKP (ECF No. 9) (W.D. Tex. Feb. 26, 2026); *Fernandez v. Vergara*, Case No. SA-26-CA-00500-XR (ECF No. 8) (W.D. Tex. Feb. 26, 2026); Martinez v. Noem, No. 3:25-cv-430-KC, 2025 WL 2965859, at *3-5 (W.D. Tex. Oct. 21, 2025); *Santiago v. Noem*, No. 3:25-cv-361-KC, 2025 WL 2792588, at *10-13 (W.D. Tex. Oct. 2, 2025); and *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 685-87 (W.D. Tex. 2025).

[2]  Although not controlling here, the *Hurtado* decision was vacated under the APA in *Bautista v. Santacruz*, ___ F. Supp. 3d ___, Case No. 25-cv-01873-SSS-BFM, 2026 WL 468284, at *10 (C.D. Cal. Feb. 18, 2026) ("The Court's initial decision to deny Petitioners' request to vacate *Yajure Hurtado* under the APA was an act of judicial restraint: a formality.  However, based on the representations Respondents have made to the Court, it is evident that further relief is both necessary and proper. The Court **VACATES** *Yajure Hurtado* under the APA." (emphasis in original)).

*Buenrostro-Mendez*, 166 F.4th at 498.  *Buenrostro-Mendez* is binding precedent and requires denial of the Petition as to Petitioner's statutory claim.

However, Petitioner argues detention without an opportunity for a meaningful individualized custody determination is unlawful on both statutory grounds *and* constitutional due process grounds. The *Buenrostro-Mendez* decision did not reach the due process question, confining its analysis and holding to statutory interpretation.  *See generally Buenrostro-Mendez*, 166 F.4th 494, 498-508 (5th Cir. 2026).  And, the case was remanded to the district court, not for dismissal, but "for further proceedings consistent with this opinion." *Id*. at 508.  Presumably, those further proceedings will address Mr. Buenrostro-Mendez's due process claim, which the district court declined to reach in the first instance.[3] Indeed, Respondents' counsel stated it precisely during oral argument:  "We have one issue before the Court now:  the statutory question. . . . There's not, in other words, a due process claim here." Oral Argument, *Buenrostro-Mendez v. Bondi¸* No. 25-20496, at 44:56–45:11 (5th Cir. Feb. 3, 2026), *available at* https://www.ca5.uscourts.gov/OralArgRecordings/25/25-20496_2-3-2026.mp3.

As our sister court in the El Paso Division previously stated, "*Buenrostro-Mendez* has no bearing on this Court's determination of whether [a habeas petitioner] is being detained in violation of her constitutional right to procedural due process." *Marceau v. Noem*, No. 3:26-cv-237-KC, 2026 WL 368953, at *2 (W.D. Tex. Feb. 9, 2026).  At least one other court in the El Paso Division has held the same, granting an immigration detainee's habeas claim days after the decision in *Buenrostro-Mendez*. *Hassen v. Noem*, No. 3:26-cv-48-DB, ECF No. 8 at *4 n.1 (W.D. Tex. Feb. 9, 2026), ("*Buenrostro-Mendez* does not change this case's outcome on procedural due process grounds.").

---

[3]  *Buenrostro-Mendez* was consolidated with another case on appeal.  166 F.4th at 502. In that case, the district court also declined to reach the due process claim, granting the  petition solely on statutory grounds. *Covarrubias v. Vergara*, No. 25-cv-112, 2025 WL 2950097, at *5 n.3 (S.D. Tex. Oct. 8, 2025).

Respondents have argued that due process claims should be denied.  This is so, Respondents contend, because the Fifth Circuit in *Buenrostro-Mendez* found that *Zadvydas v. Davis* did not apply to detained aliens who received or were receiving due process through removal proceedings. Respondents' assertion relies on the following language in the penultimate paragraph of the *Buenrostro-Mendez* decision:

> The petitioners' fears about potential abuse of detention pending removal proceedings under Section 1225b2A [sic] are wholly speculative. In any event, *Zadvydas v. Davis*, 533 U.S. 678, 678 (2001), has no direct application to aliens who are detained and being given due process during removal proceedings.

*Id.* at 508 (full citation omitted).

In *Zadvydas*, the Supreme Court considered a challenge to the statute that permits the Government to detain aliens who are subject to final orders of removal.  533 U.S. at 682. The Court held that such detention becomes unlawful once removal is no longer reasonably foreseeable because "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 699.  Therefore, *Zadvydas* by its very terms squarely applies to post-removal-period-detention. *See id.*  But, it "has no direct application" to people who are detained pending removal proceedings. *Buenrostro-Mendez*, 166 F.4th at 508 (citation omitted), and, the constitutional concerns of indefinite detention raised in the post-final-removal-order context are not equally present when removal proceedings remain pending and will eventually conclude.  *See Zadvydas*, 533 U.S. at 697.  The Fifth Circuit's reiteration of *Zadvydas*' general inapplicability to pre-final-removal-order-detention is not a ruling on the viability of any and all due process challenges to that detention.  *Conforme v. DeAnda-Ybarra*, Cause No. EP-26-CV-263-KC, 2026 WL 381110, at *2 (W.D. Tex. Feb. 11, 2026).  "And this aside does not change the fact that the Fifth Circuit only decided the statutory question and did not adjudicate the petitioners' due process claims."  *Id.*; *see also Marceau,* 2026 WL 368953, at *2; *Hassen*,  No. 3:26-cv-48-DB, ECF No. 8 at *4.

-12-

As discussed later, numerous immigration decisions finding due process violations in this District have been based on the *Mathews v. Eldridge* test and principles of procedural due process, not on *Zadvydas*. *See, e.g., Martinez v. Noem,* No. 3:25-cv-430-KC, 2025 WL 2965859, at *3-5 (W.D. Tex. Oct. 21, 2025); *Santiago v. Noem*, No. 3:25-cv-361-KC, 2025 WL 2792588, at *10-13 (W.D. Tex. Oct. 2, 2025); *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 685-87 (W.D. Tex. 2025).  Therefore, *Buenrostro-Mendez* does not preclude Petitioner's procedural due process claim.[4]

Respondents now argue that post *Buenrostro-Mendez*, Petitioner's procedural due process claim is foreclosed by the decision in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003). However, *Doe* arose in an entirely different context—a challenge to a sex offender registration statute—and did not address an immigration detainee's challenge to their detention without a bond hearing. *See Doe*, 538 U.S. at 4. Thus, the Court does not find *Doe* applicable.

Respondents also argue Petitioner's due process claims must be denied under *Demore v. Kim*, 38 U.S. 510 (2003). *Demore* does not preclude Petitioner's procedural due process claim for two reasons. First, *Demore* addressed a challenge to mandatory detention under 8 U.S.C. § 1226(c), which only applies to a specific class of aliens convicted of serious crimes. *See id.* at 517–18.  Respondents do not purport to detain Petitioner under § 1226(c), but instead § 1225(b).   Second, and more importantly, *Demore* was a deeply fractured plurality opinion, in which only one Justice joined the opinion in full. Critically, a majority of the Court concluded that at least some individualized preliminary proceeding was required by the Due Process Clause in order to detain an alien pending removal proceedings, even in the context of aliens who had been convicted of serious crimes. *See id.*

---

[4] Courts in this District have already rejected Respondents' other due process arguments or else did not need not reach them. *See Marceau,*  2026 WL 368953, at *2; *Hassen*, No. 3:26-cv-48-DB, ECF No. 8 at *4 n.1 (W.D. Tex. Feb. 9, 2026); *Lala Barros v. Noem*, No. 3:25-cv-488-KC, 2025 WL 3154059, at *1-6 (W.D. Tex. Nov. 10, 2025); *Erazo Rojas v. Noem*, No. 3:25-cv-443-KC, 2025 WL 3038262, at *1-5 (W.D. Tex. Oct. 30, 2025); *Martinez*, 2025 WL 2965859, at *1-5; *Santiago*, 2025 WL 2792588, at *1-14; *Lopez-Arevelo*, 801 F. Supp. 3d at 674-88.

at 531–32 (Kennedy, J., concurring); *id*. at 551–52 (Souter, J., concurring in part and dissenting in part); *id*. at 578–79 (Breyer, J., concurring in part and dissenting in part). Thus, Petitioner's due process claim challenging his detention without a bond hearing is not foreclosed by *Demore*. *See Raymundo v. Bondi*, Cause No. EP-26-CV-387-KC, (ECF No. 5 at page 3) (W.D. Tex. Feb. 24, 2026) (allowing due process claim to proceed despite Respondents' objections under *Doe* and *Demore*).

Finally, contrary to arguments Respondents have made, *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 140 (2020), "does not foreclose [Petitioner's] due process claims." *Ochoa v. Vergara*, ___ F. Supp. 3d ___, No. 1:26-CV-266-RP, 2026 WL 482211, at *2 (W.D. Tex. Feb. 20, 2026) (quoting *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, at *7 (W.D. Tex. Oct. 21, 2025)). There are "two key points of distinction between *Thuraissigiam* and [Petitioner's] case." *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 682 (W.D. Tex. 2025). First, unlike the petitioner in *Thuraissigiam*, Petitioner does not challenge the admission process in any way or assert a right to remain in the United States. *See* 591 U.S. at 140 ("For these reasons, an alien in respondent's position has only those rights regarding *admission* that Congress has provided by statute.") (emphasis added)). Petitioner "merely seeks a chance to apply for release . . . [and] [n]othing in *Thuraissigiam* suggests [he] lacks such a due process right." *Hernandez-Fernandez*, 2025 WL 2976923, at *8. A "second key point of distinction is that *Thuraissigiam* was stopped by Border Patrol 'within twenty-five yards of the border,' immediately detained, and never released." *Id*. By contrast, Petitioner has lived in the United States prior to Petitioner's detention. For constitutional purposes, Petitioner's time living in the United States differentiates Petitioner from the Petitioner in *Thuraissigiam* because "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Th[is] distinction between an alien who has effected an entry into the United States and one who has never

entered runs throughout immigration law." *Id*.; *see also Mendoza,* 2026 WL 809441, at *7 (quoting

*Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859, at *4 (W.D. Tex. Oct. 21, 2025)

("Further, even in circumstances like those here—lacking a prior detention, release, and

re-detention—noncitizens already in the country who have 'established a life here–albeit without

authorization,' possess 'a strong liberty interest in their freedom from detention.'")); *see also Godinez*

*v. Mullin*, No. 1:26-CV-860-RP, 2026 WL 1078579, at *2–3 (W.D. Tex. Apr. 17, 2026).

Judge Rodriguez further explained why the time and place of detention is critical to the analysis:

> A "second key point of distinction is that Thuraissigiam was stopped by Border Patrol 'within twenty-five yards of the border,' immediately detained, and never released." *Hernandez-Fernandez*, 2025 WL 2976923, at *8.  For constitutional purposes, Petitioner's substantial presence in the United States differentiates him from the petitioner in *Thuraissigiam* because the Due Process Clause grants protection to "all persons within the territory of the United States," *Wong Wing v. United States*, 163 U.S. 228, 238 (1896), and "aliens receive constitutional protections when they have come within the territory of the United States and developed substantial connections with this country." *United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990). *Thuraissigiam*'s own language indicates that this distinction is material. *See Thuraissigiam*, 591 U.S. at 138 ("[A]s to foreigners who have never been naturalized, nor acquired any domicile or residence within the United States, nor even been admitted into the country pursuant to law, the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law." (quotations omitted) (emphasis added)).  As the Supreme Court has confirmed, the constitutional analysis (*i.e.*, the process due) depends, in part, on where and when a noncitizen is detained:

>> The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law. It is well established that certain constitutional protections available to persons inside the United States are unavailable to aliens outside of our geographic borders. But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all "persons" within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent.

> *Zadvydas*, 533 U.S. at 693 (citations omitted).

Noncitizens may establish substantial presence in the United States based on (1) their entry into the United States without inspection or (2) the government's parole or

release of the detainee into the interior after their initial apprehension. Noncitizens who have lived with relative freedom in the United States for extended periods—unlike those detained in immigration processing centers at the border—cannot reasonably be deemed never to have been "here." *Rincon v. Hyde*, No. CV 25-12633-BEM, 2025 WL 3122784, at *7 (D. Mass. Nov. 7, 2025); cf. 8 C.F.R. § 241.4(l)(2) (procedural requirements for revoking noncitizen's supervised release); 8 C.F.R. § 212.5(e)(2)(i) (procedures for terminating parole). And to erase a noncitizen's years-long presence in the country "is, in essence, to erase his rights." *Rincon*, 2025 WL 3122784, at *7. Thus, for noncitizens who have entered or otherwise been released into the interior and established a substantial presence in the United States, the "entry fiction" applicable to their removal proceedings gives way to their interest in freedom from detention under *Mathews v. Eldridge*.

*Oliva v. Bondi*, No. SA-26-CA-00850-XR, 2026 WL 912657, at *8 (W.D. Tex. Mar. 23, 2026).

"This represents a growing consensus that *Thuraissigiam's* limitation on due process rights applies only to aliens at the threshold of initial entry, not to those who have established a substantial presence in the country." *Id.* (collecting cases); *see also Rodriguez Brizuela v. Noem*, Case No. 5:26-CV-0279-JKP, 2026 WL 752257, at *4 (W.D. Tex. Mar. 4, 2026).

Admittedly, "[t]the territorial application of due process rights can have seemingly perverse consequences in that it affords greater protections to noncitizens who entered the country illegally than to those seeking lawful admission at the border." *Oliva*, 2026 WL 912657, at *9. But "government intrusions have always been tolerated at the border that would be intolerable in the interior, for the obvious reason that citizens and noncitizens alike expect to be able to go about their business [in the interior] without having to show that they are 'clearly and beyond doubt entitled to be admitted' if taken, or mistaken, for an otherwise inadmissible noncitizen." *Id.* (quoting *Buenrostro-Mendez*, 2026 WL 323330, at *18) (Douglas, J., dissenting) (quoting 8 U.S.C. § 1225(b)(2)).

Having established that Petitioner is entitled to due process protections, the Court turns to the *Mathews* factors to guide the analysis of what process is due. In *Mathews v. Eldridge*, the United States Supreme Court set forth three factors for courts to consider in resolving due process challenges to

procedures that would deprive an individual of his or her life, liberty, or property:

> (1)     the private interest that will be affected by the official action;
>
> (2)     the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and
>
> (3)     the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 334-35 (1976).

As to the first element of the *Mathews* test, Petitioner's private interest in being free from detention is strong. *Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment–from government detention, or other forms of physical restraint–lies at the heart of the liberty that [the Due Process] Clause protects."); *United States v. Salerno*, 481 U.S. 739, 755 (1987) ("In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception); *Addington v. Texas*, 441 U.S. 418, 425 (1979) ("Civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protections."). Thus, the first factor weighs heavily in favor of granting relief.

Under the second *Mathews* factor, the Court considers "whether the challenged procedure creates a risk of erroneous deprivation of individuals' private rights and the degree to which alternative procedures could ameliorate these risks." *Lopez-Arevelo*, 801 F. Supp. 3d at 686 (quotation omitted). "Our immigration law has long recognized that noncitizens have an interest in an individualized hearing prior to detention in connection with immigration proceedings." *Oliva*, 2026 WL 912657, at *9 (citing *Yamataya v. Fisher*, 189 U.S. 86, 101 (1903)). And the Supreme Court has required individualized hearings for deprivations of interests less fundamental than Petitioner's interest in freedom from detention. *Id.* (citing *Goldberg v. Kelly*, 397 U.S. 254, 268 (1970) (requiring an individualized hearing

prior to the termination of welfare benefits)).  Here, the risk of an erroneous deprivation of Petitioner's rights is high. Without an individualized hearing, there is substantial risk that noncitizens with a substantial presence in the United States who pose neither flight risk nor danger to the community will be detained. An individualized assessment before an immigration judge substantially reduces this risk. *See Demore*, 538 U.S. at 531–32 (Kennedy, J., concurring) (reasoning that "due process requires individualized procedures to ensure there is at least some merit to the" charge and detention).

An individualized analysis ensures the purpose of detention is not punitive. By releasing Petitioner into the interior, Respondents have already concluded that Petitioner does not present a flight or security risk. Without evidence of a change in the individualized circumstances, there is no reason to believe that re-detention serves any permissible purpose of confinement.  And, unlike mandatory detentions under Section 1226(c), there are no Congressional (or even executive) findings that those subject to "mandatory" detention under the government's reading of Section 1225(b) are more likely, as a class, to present a flight or security risk than any other group of noncitizens.  Accordingly, to satisfy the requirements of due process, Petitioner, as a noncitizen who has established a substantial presence in the United States, is entitled to individualized findings justifying his detention.

Finally, turning to the third *Mathews* factor, Respondents' burden does not outweigh Petitioner's interests.  "To be sure, the government has a weighty interest in removing deportable noncitizens, ensuring compliance with Orders of Supervision, and protecting the public." *Villanueva*, 801 F. Supp. 3d at 705. "But those interests would be adequately served through individualized bond hearings or other detention proceedings that assess flight risk and dangerousness on a case-by-case basis. Respondents make no meaningful representation that the burden of providing this additional increment of process is beyond their ability. Instead, they only maintain that due process does not require it."

*Oliva*, 2026 WL 912657, at * 14.   Because the Court finds to the contrary, Petitioner is entitled to relief.

In sum, because Petitioner is a person who had established a substantial presence in the United States before Petitioner's detention, Petitioner possesses Fifth Amendment due process rights requiring an individualized hearing justifying Petitioner's detention.  And, for the reasons set forth above, this Court agrees with recent decisions that have consistently found the *Mathews* balancing test supports this conclusion.

## THE SCOPE OF RELIEF

Because the Court has found a constitutional violation, the next step is to determine an appropriate remedy for such violation.  On similar facts, the Court previously granted habeas relief on a due process violation and thus ordered Respondents to either provide a bond hearing before an immigration judge, at which Respondents shall bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Petitioner's continued detention or to release Petitioner from custody under reasonable conditions of supervision.  "However, upon further consideration, the Court now joins other district courts across the country in finding that the significant violation of Petitioner's due process rights and other prudential concerns weigh in favor of ordering Petitioner's immediate release." *Cruz-Reyes v. Bondi*, ___ F. Supp. 3d ___, Civil Action No. 5:26-CV-60, 2026 WL 332315, at *5 (S.D. Tex. Feb. 3, 2026).

"Habeas is at its core a remedy for unlawful executive detention.  In cases where the Court finds a constitutional violation, "[t]he typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "In recent months, courts across the country have ordered the release of detainees in similar situations." *Moctezuma v. Henkey*, No. 1:25-CV-741-BLW, 2026 WL 18809,

at *5 (D. Idaho Jan. 2, 2026) (ordering immediate release and collecting cases across jurisdictions); *Cruz-Reyes v. Bondi*, No. 5:26-CV-60, ___ F. Supp. 3d ___, 2026 WL 332315, at *13 (S.D. Tex. Feb. 3, 2026) ("[D]ue process concerns weigh heavily in favor of granting immediate release."); *Santiago*, 2025 WL 2792588, at *13–14 (collecting cases and finding that "immediate release appropriately remedies Respondents' violation of [Petitioner's] due process rights through her continued detention.").

Certainly, requiring a bond hearing would be a logical remedy, given that Courts have identified procedural, not substantive, due process violations. *Lopez-Arevelo*, 801 F. Supp. 3d at 687–88 (noting that the "comfortable majority position—both historically and in recent weeks—is to . . . require a bond hearing before an [immigration judge]"). Nonetheless, given Respondents' consistent position before this Court that the only relief available to petitioners through habeas is release from custody, the Court will order release instead. *See Oliva v. Bondi*, No. SA-26-CA-00850-XR, 2026 WL 912657, at *14 (W.D. Tex. Mar. 23, 2026); *Mendoza v. Noem*, ___ F. Supp. 3d ___, Civil Case No. 5:26-CV-0728-JKP, 2026 WL 809441, at *9 (W.D. Tex. Feb. 26, 2026).

And the Court agrees that bond hearings are "no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Cruz-Reyes*, 2026 WL 332315, at *5 (quotation marks omitted). "The suggestion that government agents may sweep up any person they wish without consideration of dangerousness or flight risk, so long as the person will, at some unknown future date, be allowed to ask some other official for his or her release, offends the ordered system of liberty that is the pillar of the Fifth Amendment." *Gonzalez v. Joyce*, No. 25 Civ. 8250 (AT), 2025 WL 2961626, at *5 (S.D.N.Y. Oct. 19, 2025). Further, in cases of re-detention of a noncitizen in violation of the Fifth Amendment, "a post-deprivation bond hearing before a DHS officer or even an immigration

judge would provide no genuine opportunity to relief because the detention without adequate pre-deprivation procedures has already been carried out." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 319-20 (E.D.N.Y. 2025).  In the event that Respondents seek to re-detain Petitioner at a future date, however, they must, at a minimum, afford Petitioner a bond hearing that accords with the requirements of due process.

### CONCLUSION

After careful consideration of the entire record, and for reasons explained at length in *Oliva*, *Rodriguez Brizuela*, *Marceau*, *Hassen*, *Lala Barros*, *Erazo Rojas*, *Martinez*, *Santiago*, *Lopez-Arevelo,* and many other decisions involving habeas claims brought by petitioners subject to mandatory detention under the Respondents' new interpretation of 8 U.S.C. § 1225(b), this Petition is granted on due process grounds.  *See also Arias v. Noem*, ___ F. Supp. 3d ___, Civil Case No. SA-26-CV-415-FB, 2026 WL 255706 (W.D. Tex. Jan. 31, 2026).  However, because fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, are not available in habeas corpus proceedings like this one, *see Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023), the Court denies any request for fees in this case.

IT IS THEREFORE ORDERED that the Petition for Habeas Corpus (ECF No. 1) is **GRANTED** such that:

1.      Respondents are **DIRECTED** to **RELEASE** Petitioner Gumersindo Jimenez-Silva, A Number: 206-256-050,  from custody, under appropriate and reasonable conditions of release, to a public place as soon as practicable but in any event no later than 12 noon on **Tuesday, May 5, 2026**.

2.      Respondents must **NOTIFY** Petitioner's counsel, by email or by a direct telephone conversation, of the exact location and exact time of release as soon as practicable and no less than two hours before release.

3.      Respondents shall **FILE** a status report no later than **Wednesday, May 6, 2026**, confirming that Petitioner has been released.

IT IS FURTHER ORDERED that Plaintiff's Motion for Temporary Restraining Order or, in the Alternative, for a Preliminary Injunction (ECF No. 2) is DISMISSED AS MOOT; motions pending with the Court, if any, are DISMISSED AS MOOT; and this case is now CLOSED.

IT IS FINALLY ORDERED that a separate Judgment shall issue.

It is so ORDERED.

SIGNED this 30th day of April, 2026.

_____
FRED BIERY
UNITED STATES DISTRICT JUDGE